# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRAD DAVIDSON,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PARK COMMUNITY HIGH SCHOOL DISTRICT 231,<br><br>Defendant. | No. 15 C 0039<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Brad Davidson initiated this action against Evergreen Park Community High School District 231, alleging that it denied him leave or use of leave as provided for in the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2917. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The School District has filed a Motion to Bar Testimony or Other Evidence of Plaintiff's Ability to Return to Work and Damages. For the reasons set forth below, the Motion is granted in that Plaintiff cannot present evidence that he was able to return to work from November 25, 2014 to January 5, 2015.

## I. BACKGROUND

In his Amended Complaint, Davidson alleges that the School District interfered with and restrained his use of FMLA leave to care for his wife, Bonny Davidson. First Davidson alleges that the School District improperly denied him FMLA leave from August 19-22, 2014; he then asserts the School District prevented him from

returning to work from November 25, 2014, through January 4, 2015. (Dkt. 23 (Compl.) ¶¶ 8, 10, 29, 31). Davidson also alleges that he was terminated after returning to work at least in part because of his use of FMLA leave. (*Id.* at ¶ 37).

In responding to the School District's interrogatories, Davidson asserted that he was able and available to work from November 25, 2014, through January 4, 2015, and that he worked during this period as a private tutor. (Dkt. 58, Ex. C at ¶ 6). But Davidson objected to producing Bonny's medical records and his tax returns. (*Id.*, Ex. B at ¶¶ 8, 20). On August 21, 2015, the School District filed a motion to compel responses to its document requests. (Dkt. 12). On September 17, 2015, the Court granted the motion, in part, and ordered Davidson "to produce medical records regarding his spouse's medical condition that are relevant to his being eligible for FMLA leave." (Dkt. 18). Although Bonny was treated by eight separate physicians, Davidson only produced medical records from a Dr. Joel Shoolin. (Dkt. 58 at ¶ 8).

During his January 13, 2016 deposition, Davidson testified to the following: (a) Bonny was evaluated and treated by eight different doctors between August and December 2014; (b) Bonny tracked her medical appointments on an electronic calendar; (c) Davidson required FMLA leave to drive Bonny to and from her two-to-four-hour medical appointments as well as her two-hour physical therapy appointments; (d) Bonny was unable to drive from at least August 2014 through the summer of 2015; and (e) Bonny saw seven doctors from Thanksgiving through Christmas 2014. (Dkt. 58, Ex. D at 98–107). When the School District's attorney questioned whether Davidson could have returned to work after Thanksgiving 2014

in light of the assistance Bonny required to attend her medical appointments, Davidson testified that all seven doctor's appointments occurred before November 25.[1] (*Id.* at 103–04).

After the deposition, the School District requested that Davidson supplement his production by providing *all* of Bonny's medical records from August 2014 through April 2015. (Dkt. 58 at ¶ 11 & Ex. E). On March 9, 2016, Plaintiff's counsel informed Defendant's counsel that he instructed Davidson to gather Bonny's medical records. (*Id.* ¶ 14). On March 18, Plaintiff's counsel reported to defense counsel that he had some, but not all of Bonny's medical records and would produce them shortly; however, no records were produced. (*Id.* ¶¶ 16–19).

At the March 22, 2016 status, the parties reported having resolved their remaining discovery disputes but requested entry of an Amended Protective Order before exchanging documents, including medical records. (Dkt. 47). Two days later the court entered the Amended Protective Order. (Dkt. 48).[2] Nevertheless, on April 27, 2016, the School District was forced to file a second motion to compel. (Dkt. 50). At the hearing on the motion, Plaintiff's counsel informed the Court that he was in possession of the medical records from all of Bonny's medical providers, with the exception of Dr. Sekadia, her pain specialist. (Dkt. 58 at ¶ 21).[3] The Court ordered Davidson to produce *all* medical records, except Dr. Sekadia's, by the end of the day,

---

[1] In 2014, Thanksgiving was on November 27.
[2] The amendment defined School District Board Meeting minutes as confidential documents; it had no impact on the production of medical records which were covered by the original Protective Order entered on October 9, 2015. (Dkt. 24).
[3] The Court has reviewed the audio recording from this hearing to confirm that Plaintiff's counsel indicated that he was in possession of all of Bonny's other medical records.

and ordered Davidson to produce Dr. Sekadia's records, along with Davidson's W2s and 1099s from August 2014 through the present, by May 20, 2016. (Dkt. 54).

Davidson's April 28 production was incomplete. First, instead of producing the original calendar of Bonny's appointments, Davidson produced a list of Bonny's medical appointments allegedly drafted by Bonny based on the calendar. (Dkt. 58 at ¶ 22 & Ex. K). Second, while the list indicates Bonny had at least 16 medical appointments between November 25, 2014, and January 5, 2015, Davidson produced medical records from only a quarter of those visits. (*Id.* ¶ 23 & Ex. K). On May 20, 2016, Davidson produced his W2 statements from the School District but failed to produce any tax forms relating to his employment as a tutor from August 2014 through the present. (*Id.* ¶ 25 & Ex. L).

## II. DISCUSSION

### A. Applicable Law

The Federal Rules grant the district court with discretionary authority to impose appropriate sanctions for violations of discovery orders. Fed. R. Civ. P. 37(b)(2)(A); *see e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) ("[D]istrict courts have wide latitude in fashioning appropriate sanctions.") (citation omitted). The Supreme Court has explicitly stated that sanctions may be appropriate where the noncomplying party acted *either* with willfulness, bad faith *or* fault. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (per curiam). "'Fault,' . . . doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—

which eventually culminated in the violation." *Marrocco v. Gen'l Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). "Fault," however, is more than "a mere mistake or slight error in judgment;" instead, it "suggests objectively unreasonable behavior." *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000); *see e360 Insight*, 658 F.3d at 642–43 (observing that negligence is sufficient fault for imposing sanctions). The possible sanctions for failure to comply with a discovery order are listed in Rule 37 and include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

The district court also has the inherent authority to sanction a party. This authority is based on the court's power "to control the judicial process and litigation" (*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010) (citation omitted)) and to "manage and ensure the expeditious resolution of cases." *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *8 (N.D. Ill. Aug. 18, 2005). This power is necessary "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Thus, "[j]udges have inherent authority to impose sanctions for misconduct by litigants, their lawyers, witnesses, and others who participate in a lawsuit over which the judge is presiding." *S.E.C. v. First Choice Mgmt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012). The underlying policy "is the need to preserve the integrity of the judicial process in order to retain confidence that the process works

to uncover the truth." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) (citation omitted).

Whether under Rule 37 or the court's inherent authority, the party seeking sanctions must demonstrate that it was prejudiced by the discovery violation. *Marrocco*, 966 F.2d at 225. In evaluating the proposed sanction, the district court should determine if a lesser sanction would be adequate (*see id.*), considering "the entire procedural history of the case." *Long*, 213 F.3d at 986.

## B. Plaintiff is barred from offering evidence that he could return to work between November 25, 2014 and January 5, 2015.

The School District moves for sanctions for under Rule 37. (Dkt. 58). Davidson responds that because he has "substantially complied with all discovery", and the School District was not prejudiced, so no sanctions are warranted. (Dkt. 71 at 3, 5).

In light of Davidson's allegation that the School District interfered with his FMLA rights by not permitting him between to return to work November 25, 2014 and January 5, 2015 and his testimony about Bonny's medical appointments and need for a driver, Bonny's medical records for the period November 25, 2014 through January 5, 2015 are particularly relevant. On September 17, 2015, the Court ordered Davidson to produce these medical records. Then on April 28, 2016, Davidson assured the Court that he would be producing *all* medical records, with the exception of Dr. Sekadia's, by the end of the day. (Dkt. 54). But Davidson's production was grossly inadequate. According to a "summary" of Bonny's original calendar of medical appointments, she had 16 appointments during the crucial

period of November 25, 2014, through January 4, 2015. (Dkt. 58, Ex. J). Davidson produced medical records for only three of those appointments.

That lack of production, after an assurance from Plaintiff's counsel that all the records were in hand, is prejudicial to the School District when it is being accused of interfering with Davidson's FMLA rights.[4] Davidson alleges that the School District interfered with his use of FMLA leave by declining to allow him to return to work on November 25, 2014. (Compl. ¶ 10). During his deposition, Davidson testified that from August 2014 through August 2015, Bonny's poor health prevented her from driving, and he was required to transport her. (Dkt. 58, Ex. D at 99–105). He also testified that she saw seven doctors between Thanksgiving and Christmas 2014; but that all of the appointments took place before November 25, 2014. (*Id.* 101–04). The School District has the right to test these competing propositions and Davidson's credibility. It is Davidson's allegations and his testimony that have made the lack of these medical records prejudicial to the School District.

Davidson responds that the unproduced documents belong to third parties. It is true Bonny's medical records belong to Bonny and her health care providers. But Davidson never sought leave to subpoena any health care provider. Davidson also responds that he "substantially" complied with the discovery requests. (Dkt. 71 at

---

[4] Davidson also failed in his discovery obligations by submitting a summary of Bonny's medical appointments from July 2014 through April 2015 as opposed to producing a copy of the calendar itself. Assuming that this calendar is accurate, Davidson produced medical records for only 28 of the 106 appointments listed during the July 2014 to April 2015 time frame. That is woefully inadequate.

5). To the contrary, Davidson's production of medical records for only 26% of the appointments does not constitute "substantial" compliance.[5]

The Court is not persuaded by the cases cited by Davidson for the proposition that imperfect discovery responses do not warrant sanctions. (Dkt. 71 at 1). In *Mayor & City Council of Baltimore v. Priceline.com Inc.* the court found that the plaintiff's "imperfections" in supplementing its damages disclosures under FRCP 26(a)(1)(A)(iii) were harmless. 2013 WL 4507942 (D. Md. Aug. 22, 2013). By contrast, here, the issue is not Davidson's damages disclosures, but his failure to produce records relevant to the School District's defense, and such failure is not harmless. In *Girard v. Foster* a state rule required the court "to impeccably detail a party's continuing failure to provide appropriate discovery" before imposing a sanction of dismissal. 2013 WL 598970, at *5 (N.J. Super. Ct. App. Div. Feb. 19, 2013). Here, the Court is not considering dismissal and the Court was clear in two court orders that Bonny's medical records were relevant and Davidson was required to produce them. Finally, in *Knight v. Brog*, the state court denied a motion to compel because the defendant "made substantial, albeit not perfect, compliance with plaintiff's discovery demands." 2015 WL 5236755, at *11 (Conn. Super. Ct. July 31, 2015). As discussed above, Davidson has not substantially complied with the School District's discovery requests or this Court's orders. *Cf. United States v.*

---

[5] The Court rejects Davidson's suggestion that the Court re-open discovery to allow "the parties to each review and supplement their discovery productions." (Dkt. 71 at 5). Davidson has had over a year to produce the medical records at issue—records which on April 28, 2016, counsel assured the Court had already been gathered. Such a solution would not be fair to the School District.

*Manglitz*, 939 F. Supp. 1211, 1220 (D. Md. 1996) (in criminal case implicating the constitutional right to a fair trial, the court denied the defendant's motion for a new trial after finding no due process violation where the government disclosed the *Brady* material for defendant's use at trial).

The School District requests that the Court sanction Davidson for his noncompliance with discovery orders by barring Davidson from offering evidence, including testimony, that he was able to return to work from November 25, 2014, through January 5, 2015. (Dkt. 58 at ¶ 31). The Court believes this sanction is appropriate and narrowly tailored to the discovery violation at issue. *Price v. Wrencher*, No. 13-CV-1785, 2014 WL 4269079, at *3 (N.D. Ill. Aug. 27, 2014) (finding that prohibiting the plaintiff from asserting or defending a claim was the appropriate sanction for her failure to comply with a court order compelling discovery); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2013 WL 4598490, at *14 (N.D. Ill. Aug. 29, 2013) (finding that the preclusion of defendant's two defenses and introduction of certain evidence was tailored to defendant's violation "because the main thrust of the outstanding discovery it refused to produce and repeatedly failed to substantively address" was related to those defenses). Moreover, the Court finds that no lesser sanction would be effective at addressing Davidson's disregard of his discovery obligations and Court orders.[6]

---

[6] The School District also requests that the Court sanction Davidson for failing to produce complete tax records from August 1, 2014, to the present by barring him from claiming or offering evidence of lost wages and damages from November 25, 2014, through the present. (Dkt. 58 at ¶¶ 32–33). The Court denies this request without prejudice. Should this case proceed to trial, the Court will entertain a motion in limine regarding this issue.

## III. CONCLUSION

For the reasons discussed above, Defendant's Motion to Bar Testimony or Other Evidence of Plaintiff's Ability to Return to Work and Damages [58] is **GRANTED IN PART**. Plaintiff is barred from offering evidence, including testimony, that he was able to return to work from November 25, 2014, through January 5, 2015. The School District's request for attorney's fees (*id.* at 7) is denied.

E N T E R:

Dated: November 23, 2016

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge