# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRAD DAVIDSON,

      Plaintiff,

      v.

EVERGREEN PARK COMMUNITY
HIGH SCHOOL DISTRICT 231,

      Defendant.

No. 15 C 0039

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Brad Davidson initiated this action against Evergreen Park Community High School District 231 (District), alleging that it denied him leave or use of leave as required by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2917. Davidson also alleges that Evergreen Park fired him because of his use of FMLA leave.[1] The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The District has filed a Motion for Summary Judgment. For the reasons set forth below, the Motion is granted.

---

[1] In August 2016, the Court granted the District's motion to dismiss Counts III and IV of the Amended Complaint, which alleged a breach of contract and a breach of the duty of good faith and fair dealing. (Dkt. 65).

# I. SUMMARY JUDGMENT

## A. Legal Standard

Summary judgment is proper only if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court views the evidence in the light most favorable to Davidson, the nonmoving party, and draws all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). To avoid summary judgment, Davidson, who bears the burden of proof, cannot rely on the pleadings alone, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see Celotex*, 477 U.S. at 324 (Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citation omitted).

"The facts must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits." *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). The Court may also consider properly authenticated and admissible documents or exhib-

its. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006).

## B. Local Rule 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." The nonmoving party must then "admit or deny every factual statement proffered by the moving party and [ ] concisely designate any material facts that establish a genuine dispute for trial." *Ricco v. Sw. Surgery Ctr., LLC*, 73 F. Supp. 3d 961, 965 (N.D. Ill. 2014) (citing LR. 56.1(b)(3)). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit a statement "of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." "To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted." *Ricco*, 73 F. Supp. 3d at 965. "Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded." *Id.* at 965–66 (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("And hearsay is inadmissible in summary judg-

ment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed, provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live.") (citations omitted)).

## C. Evidentiary Objections

In its Rule 56.1 Statement of Undisputed Facts, the District attached and referenced the Evaluation and Observation Binder prepared by the District and provided to Davidson as part of Davidson's Illinois State Board of Education Tenure Teacher Dismissal Hearing (Evaluation Binder). (Dkt. 81, Ex. D). Davidson objects to the admissibility of certain portions of the Evaluation Binder as hearsay and lacking in foundation. (Dkt. 100). Although the Evaluation Binder appears to be a business record, which normally would be admissible at trial under the hearsay exception set forth at Fed. R. Evid. 803(6), the District has offered no affidavits or any other evidence establishing its authenticity. *See Woods*, 234 F.3d at 988 ("Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.").

Davidson, however, admitted to over 20 of the District's statements of facts that referenced the Evaluation Binder. (Dkt. 100). By admitting to these 20 statements

of fact, Davidson conceded the accuracy of the Evaluation Binder. While the District should have submitted an affidavit to authenticate the Evaluation Binder, the Court finds no point in delaying the summary judgment ruling to require the filing of an affidavit authenticating the Evaluation Binder when Davidson has essentially conceded the accuracy of its contents. *See Cerqueira v. Cerqueira*, 828 F.2d 863, 865 (1st Cir. 1987) ("We believe that, technically speaking, Antonio should have introduced his exhibits into the record through affidavits, not as exhibits to a memorandum of law. . . . We see no point in remanding this case to permit Antonio to file an affidavit stating the very thing that Ivo has conceded, namely, that the document is what it purports to be.");*Woods*, 234 F.3d at 989 ("By submitting the case report and relying on it, Woods has conceded that Flores made out a complaint against him to the Chicago Police. . . . Requiring authenticating affidavits in this case would be an empty formality, and the district court did not abuse its discretion when it considered the documents without such affidavits.").[2] Davidson's objections are overruled.

In Davidson's Rule 56.1 Statement of Additional Facts, he attached and referenced the transcripts from two closed hearings by the District's Board of Education (Board). (Dkt. 100, Exs. A (July 2014 Hr'g Tr.) & B (Mar. 2015 Hr'g Tr.)). The District objects to the transcripts as lacking in foundation. (Dkt. 93 at 1). Davidson did not offer any affidavits establishing the transcripts' authenticity. However, both transcripts were prepared by a certified court reporter, who swore to their accuracy.

---

[2] Davidson also includes a boilerplate objection to portions of the Evaluation Binder as "unduly vague." Davidson, however, has not further elucidated this objection, and the Court finds that it is without merit.

(Dkt. 100, Exs. A & B). And the District acknowledged that Exhibit A "is the transcript of the audio recording of the closed session Board of Education meeting from July 15, 2014" and that Exhibit B "is the transcript of the audio recording of the closed session Board of Education meeting from March 17, 2015." (Dkt. 93 at 2 n.1 & 4 n.2). Like with the Evaluation Binder discussed above, the Court declines to require an affidavit when the District has acknowledged the transcripts' authenticity. Moreover, the party opposing summary judgment "need not produce evidence in a form that would be admissible at trial." *IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258, 1263 (D. Kan. 1998); *see Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Instead, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by [ ] citing to particular parts of materials in the record, including depositions, documents. . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). The District's objections are overruled.[3]

---

[3] Davidson also moves to unseal the transcripts of the Board's July 15, 2014, and March 17, 2015 hearings. (Dkt. 102). While "[s]ecrecy is fine at the discovery stage," *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002), once the information is part of a dispositive motion, it becomes part of the judicial record, *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) ("Documents that affect the disposition of federal litigation are presumptively open to public view.") (citation omitted). Because the Court has considered these transcripts in this ruling, they should be open to public view. The motion to unseal the transcripts is granted. However, the Board may redact the discussion regarding a prior employee at Dkt. 100-1, lines 6:20–7:1.

## II. FACTUAL ALLEGATIONS

Davidson was hired by the District in August 1995 and was employed by the District as a high school science teacher until the Board of Education voted to terminate his employment on April 1, 2015. (¶¶ 5–7).[4]

Pursuant to the District's tenured teacher evaluation schedule, Davidson was evaluated during the 2012–2013 school year. (¶ 24 & Ex. D-14).[5] The evaluation included formal observations of Davidson's classroom by Dr. Elizabeth Hart, the District Superintendent. (¶¶ 8, 25–27). Her observations included students' classroom behavior and mannerisms to assess whether they were learning. (Pl's ¶ 20). Pursuant to the Illinois School Code, 105 ILCS 5/24A-5(b), part of the evaluation process included Davidson's use of sick leave (Pl's ¶ 15). At the conclusion of the evaluation, Davidson received a summative rating of "Needs Improvement", and he was placed on a Professional Development Plan (PDP). (Def's ¶¶ 28–29).

Davidson's PDP, which began in May 2013 and continued until March 2014, included multiple formal and informal observations of Davidson's classroom. (¶¶ 30–32). At the conclusion of his PDP, Davidson received a summative evaluation rating of "Unsatisfactory," and he was placed on a 90-day remediation plan pursuant to the Illinois School Code. (¶¶ 33, 35). Davidson was the first teacher that Hart

---

[4] Unless otherwise indicated, all factual citations are to Defendant's undisputed statements of material facts. (Dkt. 81; *see* Dkt. 88 (Pl's Resp.)).

[5] Defendant's Rule 56.1 statement and Plaintiff's response incorrectly state that the evaluation took place during the 2011–2012 school year. (*Compare* Dkt. 81 at ¶ 24, *and* Dkt. 88 at ¶ 24, *with* Dkt. 81, Ex. D-14); *see* Fed. R. Civ. P. 56(c)(3) ("The court . . . may consider other materials in the record.").

placed on a formal remediation plan. (Pl's ¶ 19). In designing the remediation plan, Hart consulted with the District's attorney and state resources regarding how to satisfy due process requirements. (*Id.*). Davidson's 90-day remediation plan began in April 2014 and was scheduled to be completed by October 2014. (Def's ¶ 37 & Ex. D-28). At his mid-point evaluation in June 2014, Davidson was rated "Unsatisfactory" in six subcategories, "Needs Improvement" in nine subcategories, and "Proficient" in seven subcategories; he received no "Excellent" ratings. (¶ 44). According to Hart, she informed Davidson that if this would have been his final evaluation, he would be terminated for unsatisfactory performance. (July 2014 Hr'g Tr. 3).

In April 2014, Hart noticed that Davidson had taken 15 sick or personal days during the 2013–2014 school year, and that since March 3, he had taken a day or part of a day off each week. (¶¶ 38–39 & Ex. F). On May 1, Hart informed Davidson that henceforth he would be required to provide her with a medical certificate supporting any sick leave request. (¶ 39 & Ex. F). After this notification, Davidson did not take any more sick days during the remainder of the 2013–2014 school year. (¶ 41).

At the Board's July 15, 2014 closed-session meeting, Hart expressed frustration that Davidson had taken a large number of sick days despite his unsatisfactory job performance ratings. (Pl's ¶ 4 & July 2014 Hr'g Tr. 2–6). She told the Board members that Davidson "is not a bad guy"; he "plans lessons . . . but he's not able to execute them." (July 2014 Hr'g Tr. 3–4). He's "trying" but the students aren't learning anything. (*Id.* 7). Hart concluded that Davidson is "in a job that he can't do." (*Id.* 4).

The Board emphasized that the District must evaluate Davidson "fairly on his ability to do his job." (*Id.* 7–8). Hart agreed, otherwise the whole evaluation would be "a joke." (Pl.'s ¶ 6 & July 2014 Hr'g Tr. 7–8). Hart notified the Board that if Davidson does not improve, she would recommend termination. (Pl's ¶ 8 & July 2014 Hr'g Tr. 10).

On August 19, 2014, Davidson left a voicemail message that he would not be reporting to work. (Def's ¶ 46). He also emailed Hart, stating: "Due to a serious family health emergency, I will be out of school today." (¶ 46). Hart questioned the validity of Davidson's absence, suspecting that he was attempting to avoid continuing the pending remediation plan based on his past actions and comments regarding attendance. (¶ 47). She replied to Davidson's email the same day, stating: "I hope things are ok." (Dkt. 81, Ex. G). Davidson responded two days later on August 21, stating: "No, things are not okay. I am working with [my spouse's] physicians to get both her urgent immediate and intermediate healthcare needs met." (*Id.*). After calling in sick again on August 20, Hart requested that Davidson provide her with a physician's certificate substantiating the reasons for his absences. (Def's ¶ 48). Davison was absent again on August 21 and 22. (¶¶ 49–50). Davison provided Hart with a letter from Dr. Joel Shoolin dated August 22, 2014: "Ms. Davidson is a patient of mine, who first presented on 8/15/2014. Since then she has had office visits, phone consultations, been refered [*sic*] to physical therapy and prescribed education and decreased activity." (¶ 50). After reviewing Dr. Shoolin's letter, Hart determined that Ms. Davidson's medical condition was not serious and thus Davidson did

not qualify for either the District's leave policy or FMLA leave. (¶ 51). Davidson returned to work on August 25 and continued to work until September 9, 2014. (¶¶ 52–53).

On September 9, 2014, Davidson emailed Hart with a request for an immediate 12-week FMLA leave to care for his wife's serious medical condition, and included a medical certificate signed by Dr. Shoolin. (¶¶ 54–55). Hart denied Davidson's request, concluding that Dr. Shoolin's statements were "vague and short" and advised Davidson what additional information was necessary to qualify for FMLA. (¶¶ 56–58 & Ex. M). After Dr. Shoolin submitted a revised medical certificate, Hart granted Davidson's FMLA leave request for 12 weeks beginning on September 9. (¶¶ 59–60). Because Davidson was scheduled to return within three weeks of the end of the semester after taking more than five weeks of FMLA leave, and in an effort to limit classroom disruption and maintain continuity of instruction, the District opted to exercise its right under FMLA Rules (29 C.F.R. § 825.602) to extend Davidson's leave until the beginning of the Spring 2015 semester on January 5, 2015. (¶ 62). On November 26, 2014, Plaintiff's attorney sent the District a letter asserting that Davidson's absence from August 19–22 should have been designated FMLA leave, and therefore, Davidson should be entitled to return to work on November 25. (¶ 64). On December 3, the District reaffirmed that Davidson was required to remain on leave until January 5, 2015. (¶ 65). Upon his return from FMLA leave on January 5, Davidson recommenced the remediation plan, which then ran through March 2015 and during which he was observed 19 times. (¶¶ 66–69, 73).

During February 2015, Davidson took additional unpaid sick days. (Dkt. 81, Ex. S). Hart notified Davidson that he had exhausted his FMLA leave until September 2015 and instructed him how to apply for unpaid medical leave to care for his wife. (*Id.*). The Board subsequently approved his request for unpaid leave. (Mar. 2015 Hr'g Tr. 6–7).

At a March 17, 2015 closed-session Board meeting, Hart reported that Davidson's performance was "degenerating." (Dkt. 92, Ex. W at 2). He's taking unauthorized naps during his prep period, which Hart described as "weird" and a Board member agreed was "crazy" considering he was in the middle of his remediation period. (*Id.* at 4–6; Mar. 2015 Hr'g Tr. 13). Hart noted that Davidson's students "are not learning anything." (Dkt. 92, Ex. W at 4). Hart opined that Davidson was "fully expecting" to be recommended for termination when his final evaluation occurs on March 20. (*Id.* at 6). The Board discussed Davidson's testimony during his Illinois Department of Employment Security hearing (Davidson had applied for unemployment while he was on FMLA), in which he admitted spending "minimal" time caring for his wife during his FMLA leave. (*Id.* at 7; Pl's ¶¶ 10–11 & Mar. 2015 Hr'g Tr. 2–5). Hart stated that it "doesn't even make sense" that he would take a 12-week FMLA leave to spend "minimal" time caring for his wife. (Pl's ¶ 11 & Mar. 2015 Hr'g Tr. 5–6). A Board member agreed, finding it "ridiculous." (Pl's ¶ 10 & Mar. 2015 Hr'g Tr. 5). The Board discussed whether Davidson would react in an "unstable" way when told he was being terminated. (Pl's ¶ 12 & Mar. 2015 Hr'g Tr. 8–9). A

Board member opined that with "ongoing lawsuits and everything else," Davidson's termination for cause would "probably help." (Pl's ¶ 13 & Mar. 2015 Hr'g Tr. 11–12).

On March 20, Davidson received an evaluation of his performance for the second 45 days of his remediation period, which included thirteen "Unsatisfactory" ratings, seven "Needs Improvement" ratings, and two "Proficient" ratings (he received no "Excellent" ratings). (Def's ¶ 74). He also received a final summative evaluation of his performance during the 90-school-day period of the remediation plan, which concluded that evidence of higher-level thinking was absent in 34 of the 90 classroom observations, group interaction was weak and at times chaotic, and evidence of active student engagement was rare. (¶ 75). He received an overall summative performance rating of "Unsatisfactory" and was rated "Unsatisfactory" in thirteen subcategories, "Needs Improvement" in seven subcategories, and "Proficient" in two subcategories; he received no "Excellent" ratings. (¶¶ 77–78).

On April 1, 2015, the Board discussed Davidson's performance and agreed with Hart's recommendation that Davidson failed to meet the District's performance expectations and was an "unsatisfactory" teacher. (¶ 79). The Board voted to terminate Davidson's employment based upon his failure to successfully remediate his performance deficiencies and his "unsatisfactory" performance evaluation rating. (¶ 80).

# III. DISCUSSION

## A. Count I—Denial of FMLA Leave From August 19–22, 2014

"The FMLA entitles eligible employees to up to twelve weeks of leave during any twelve-month period if the employee is unable to perform the functions of her position on account of a serious health condition." *de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008); *see* 29 U.S.C. § 2612(a)(1)(D). An eligible employee is also entitled to FMLA leave "in order to care for [his or her] spouse. . . [with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C). It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1); *see de la Rama*, 541 F.3d at 686 (The FMLA "also prohibits an employer from interfering with an employee's attempt to exercise her right to medical leave.").

In Count I, Davidson alleges that the District denied him FMLA leave from August 19–22, 2014. In order for Davidson to prevail, he "need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Accordingly, Davidson must demonstrate that:

    (1) he was eligible for the FMLA's protections,

    (2) his employer was covered by the FMLA,

    (3) he was entitled to leave under the FMLA,

    (4) he provided sufficient notice of his intent to take leave, and

    (5) his employer denied him FMLA benefits to which he was entitled.

*Id.* (citing 29 U.S.C. § 2611(2)(A), (4)). The District does not dispute Davidson's eligibility or its FMLA coverage.

An employee is entitled to FMLA leave "in order to care for a family member with a serious health condition." *Ballard v. Chicago Park Dist.*, 741 F.3d 838, 840 (7th Cir. 2014) (citation omitted). A "'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). While "[a]n employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions," *Burnett*, 472 F.3d at 478, the employee must alert his employer to the "seriousness of the health condition" when requesting leave, *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007). "Merely contacting the employer about illness-related absences does not adequately communicate the seriousness of the medical condition." *Ricco*, 73 F. Supp. 3d at 967; *see Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311–12 (7th Cir. 2006). "The employee's notice obligation is satisfied so long as he provides information sufficient to show that [his spouse] *likely* has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 479 (emphasis in original). "Once an employee informs his employer of his probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave." *Id.* at 480.

The only information provided by Davidson with regard to his August 19 absence is that "due to a serious family health emergency, [he] would be out of school." (Def's ¶ 46). After calling in sick again on August 20, Hart requested that Davidson provide her with a physician's certificate substantiating the reasons for his absence. (¶ 48). On August 21, Davidson told Hart that he was "working with [his wife's] physicians to get both her urgent immediate and intermediate healthcare needs met." (Dkt. 81, Ex. G). On August 22, Davidson submitted a letter from Dr. Joel Shoolin, his wife's physician, which stated: "Ms. Davidson is a patient of mine, who first presented on 8/15/2014. Since then she has had office visits, phone consultations, been refered [*sic*] to physical therapy and prescribed education and decreased activity." (Def's ¶ 50). After reviewing the letter, Hart determined that Ms. Davidson did not have a "serious health condition," and thus, Davidson did not qualify for either the District's leave policy or FMLA leave. (¶ 51).

While Davidson did not need to specifically invoke the FMLA to give notice of his intent to take FMLA leave, the Seventh Circuit has emphasized that "the notice must succeed in alerting the employer to the *seriousness* of the health condition." *Stevenson*, 505 F.3d at 725 (emphasis added). Davidson did not provide the District with any specific information with respect to his wife's medical condition, diagnosis, prognosis, or the amount of time that Davidson would need to be off work. *See Ricco*, 73 F. Supp. 3d at 968 (The Plaintiff "did not provide any information with respect to Plaintiff's medical condition, diagnosis, prognosis, ability to perform the requirements of her job, or indication of whether or when she would return to work.").

Merely using vague terms like "serious" and "urgent" was not sufficient to put the District on notice that Davidson's wife had a "serious medical problem." *Id.* ("a request for medical leave does not put an employer on notice unless the employee provides information regarding the nature of the medical problem;" therefore, "vaguely assert[ing] an ailment" provides insufficient FMLA notice) (citing *Phillips*, 450 F.3d at 312). Further, because Dr. Shoolin's note did not convey the seriousness of Bonnie Davidson's medical condition, it too was insufficient to put the District on notice that Davidson was seeking FMLA leave. *See de la Rama*, 541 F.3d at 687 ("Calling in sick without providing additional information does not provide sufficient notice under the FMLA. This is true even if the employee provides her employer with a doctor's note if the note does not convey the seriousness of her medical condition.") (citations omitted).

Davidson cites *Schober v. SMC Pneumatics, Inc.*, No. 99-1285, 2000 WL 1231557 (S.D. Ind. Aug. 21, 2000), for the proposition that "[t]he level of notice and detail required is not burdensome—a phone call telling the employer that a child is sick is sufficient to put the employer on notice that the leave potentially qualifies under the FMLA." (Dkt. 101 at 8). *Schober*, however, is a district court case that was decided before the Seventh Circuit's *de las Rama* ruling, which clearly requires more than merely calling in sick to put an employer on notice of an FMLA leave request. 541 F.3d at 687. Further, in *Schober*, the employee took multiple sick leaves during a three-month period to care for her sick son. 2000 WL 1231557, at *1–2. During that three-month period, the employee notified her supervisor that her son had ear

infections, nausea, fever, and had been admitted to the hospital. *Id.* at *2–3. Unlike the employee in *Schober*, Davidson did not provide *any* details regarding his wife's condition, diagnosis, or prognosis, or how long Davidson anticipated needing to be away from work to care for her. In fact, all indications from the treating doctor's note indicated that Davidson's wife was *not* suffering from a serious illness. (Def's ¶ 50) (describing treatment consisting of office visits, phone consultations, physical therapy, education, and decreased activity).

Davidson has not established a genuine issue of fact as to whether the District illegally denied him FMLA leave from August 19–22, 2014.[6] As a matter of law, the information provided was insufficient to put the District on notice that Davidson's spouse suffered from a serious medical condition. *See Phillips*, 450 F.3d at 312 ("Phillips' request for leave coupled with a mention of her sickness did not place the employer on notice of a probable basis for FMLA leave because she failed to convey any information regarding the nature of her medical problem. As a matter of law, the information available to Quebecor did not require further inquiry.") (citation omitted). Summary judgment is granted in the District's favor on Count I.

---

[6] Nor has Davidson established that by denying his August 19 request for leave, the District *interfered* with his right to take FMLA leave. (*See* Am. Compl. ¶ 31). After Davidson gave a proper FMLA leave request on September 9, 2014, and provided a sufficient medical statement, the District granted Davidson 12 weeks of FMLA leave beginning on September 9. (Def's ¶¶ 54–60 & Ex. M); *see de la Rama*, 541 F.3d at 687 ("in light of the fact that de la Rama was permitted to take seventeen weeks of leave . . . we find it difficult to see how the Department interfered with her entitlement to leave at all").

**B. Count II—FMLA Retaliation**

The FMLA prohibits employers from retaliating against employees who have taken FMLA leave. *See* 29 U.S.C. § 2615; *Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009). To establish a prima facie case of retaliatory discharge, Davidson must establish that: (1) he engaged in a protected activity; (2) the District took an adverse employment action against him; and (3) there is a causal connection between Davidson's protected activity and the District's adverse employment action. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). "Direct evidence typically consists of an admission by the decisionmaker that he acted with retaliatory intent." *Long*, 585 F.3d at 350. "Circumstantial evidence allows the trier of fact to *infer* intentional discrimination by the decisionmaker, typically through a longer chain of inferences." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008) (citation omitted) (emphasis in original). "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Long*, 585 F.3d at 350; *see Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 782 (7th Cir. 2007). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

The parties do not dispute that Davidson engaged in protected activity when he took FMLA leave or that he suffered an adverse employment action when the Dis-

trict terminated his employment.[7] Thus, the Court need only determine whether Davidson has established a genuine issue of fact that could support the inference that the District terminated Davidson's employment because he took FMLA leave. The Court concludes that he has not.

It is undisputed that pursuant to the District's tenured teacher evaluation schedule, Davidson was evaluated during the 2012–2013 school year. Because Davidson received a "Needs Improvement" rating at the conclusion of the evaluation, he was placed on a PDP.[8] At the conclusion of Davidson's PDP, which began in May 2013 and continued until March 2014, he received an "Unsatisfactory" rating and was placed on a 90-day remediation plan pursuant to the Illinois School Code. In March 2015, at the conclusion of the 90-day remediation, Davidson received an overall summative performance rating of "Unsatisfactory." On April 1, 2015, the Board discussed Davidson's performance and agreed with Hart's recommendation that Davidson had failed to meet the District's performance expectations. The Board voted to terminate Davidson's employment based upon his failure to successfully

---

[7] Davidson has not submitted any evidence to support his claims in Count II that the District interfered with his right to FMLA leave by (1) requesting a complete and sufficient FMLA medical certificate and (2) extending his leave through January 5, 2015. In fact, the FMLA regulations require an employee to provide a complete and sufficient FMLA medical certificate to their employer when seeking FMLA leave. 29 C.F.R. § 825.305(c). And as occurred here, the regulations allow an educational employer to require an instructional employee to remain on leave until the start of the next academic term when the employee's leave begins more than five weeks before the end of the term, lasts at least three weeks, and would otherwise return to work during the three-week period before the end of the current educational term. 29 C.F.R. § 825.602. The District is granted summary judgment on these two claims.

[8] In Illinois, teachers are evaluated using four performance ratings: "Excellent," "Proficient," "Needs Improvement," and "Unsatisfactory." 105 ILCS 5/24A-5(d)(ii).

remediate his "unsatisfactory" performance deficiencies. The Illinois School Code specifically requires that a tenured teacher be discharged if the teacher fails to complete his 90-day remediation plan with a rating of "Proficient" or "Excellent." 105 ILCS 5/24A-5(m). Thus, the undisputed evidence indicates that Davidson's employment was terminated solely because he failed to remediate his unsatisfactory job performance during a three-year tenured teacher evaluation and remediation period.

Davidson has not presented any evidence that his use of FMLA leave was a substantial force in the District's decision to terminate his employment. *See Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) ("To succeed on a retaliation claim, the plaintiff . . . [must show] that the protected conduct was a substantial or motivating factor in the employer's decision.") (citation omitted). To support his contention that the District terminated his employment because he took FMLA leave, Davidson cites to undisputed evidence of his history of poor attendance. He took FMLA leave in 2007 for a detached retina and in 2009 for a herniated disk. (Pl's ¶ 30; Def's Ex. A at 11, 13). In 2007, Davidson's department chair, Lynn Skizas, gave him a shirt that said, "I ran out of sick days so I called in dead." (Pl's ¶ 29; Def's Ex. A at 12). His union representative, Terri Poole, informed him in 2009 that he had a reputation for abusing the union's sick bank. (Def's ¶ 34). In March 2009, as part of Davidson's performance evaluation, his evaluator, Norah Fahlen, noted that Davidson had been absent 13 days. (*Id.*). But these isolated incidents took place 5–7 years *prior* to Davidson taking FMLA leave in September 2014. And the

Seventh Circuit has clearly ruled that statements made prior to an employee taking FMLA leave cannot provide evidence that an employer held a retaliatory animus towards an employee's use of FMLA leave. *Long*, 585 F.3d at 350 ("Because Long had not even applied for FMLA leave when Branham discussed Long's absences and drafted the memo to summarize the meeting, those statements that he made in the meeting and the memo cannot provide evidence that he held a retaliatory animus towards Long's use of FMLA leave."). Further, Davidson has not provided any evidence that Skizas, Poole, or Fahlen were involved in the decision to terminate his employment. *Id.* at 351 (A "plaintiff must provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason. . . . Statements by subordinates normally are not probative of an intent to retaliate by the decisionmaker.") (emphasis in original) (citations omitted).

The parties also agree that during Davidson's remediation, Hart admonished Davidson to provide medical certifications for future absences after she observed him taking sick leave every other week and was concerned that he was abusing the District's sick-leave policy. Davidson contends that because this took place during the remediation process, it is evidence of FMLA retaliation. (Dkt. 101 at 10). But the relevant question is not whether Hart's comment took place during the remediation period but whether her attendance-related statement was made after Davidson applied for FMLA leave. *Long*, 585 F.3d at 350. Hart addressed Davidson's use of sick leave on May 1, 2014. (Def's Ex. F). Davidson did not apply for FMLA leave until September 2014, over four months *after* Hart commented on his attendance. Fur-

ther, the fact that Davidson's attendance was considered as part of his evaluation is not indicative of FMLA retaliation. The District is required by the Illinois School Code to account for teachers' attendance in its evaluation procedures. 105 ILCS 5/24A-5(b); (*see* Def's Ex. A at 17).

There is also no evidence that the District's termination of Davidson's employment was preemptive retaliation for his potential future use of FMLA leave. During the Board's March 2015 hearing, Hart stated, "Everyone is just so sick of [Davidson]. It's just crazy." (May 2015 Hr'g Tr. 13). Davidson contends that this statement is evidence of the District's "fear and animosity toward Davidson's future use of medical leave." (Dkt. 101 at 10); *see Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1128 (10th Cir. 1993) ("Action taken against an individual in anticipation of that person engaging in [statutorily protected activity] is no less retaliatory than action taken after the fact. . . ."). But Hart's comment was made during the Board's discussion on why Davidson would take unauthorized naps during his prep period, which the Board thought was "weird" and "crazy," especially considering that he was in the process of a remediation plan that could lead to his discharge. (Pl's Ex. W at 4–6; Mar. 2015 Hr'g Tr. 13). And unlike in *Sauers*, where there was evidence that the employee's supervisor feared that the employee was about to file a sexual harassment charge against him, 1 F.3d at 1128, Davidson has not identified any evidence that the District feared his future use of FMLA leave, or even that he intended to take future FMLA leave. Indeed, as of April 1, 2015, his termination date, Davidson was not even entitled to any FMLA leave until at least September 2015. 29 U.S.C.

§ 2612(a)(1) (employee entitled to only 12 weeks of FMLA leave every 12 months). Further, at this same March 2015 hearing, the Board approved Davidson's request for unpaid medical leave. Thus, Davidson has not provided any evidence of a causal connection between his discharge and his future use of FMLA leave.

Davidson also asserts that the District's "obsession with and hostility towards [his] use of sick leave that could qualify under the FMLA" was demonstrated at the July 2014 Board meeting. (Dkt. 101 at 11). While Hart did express frustration that Davidson had taken a large number of sick days, she was more concerned that he was using sick days to avoid improving his unsatisfactory job performance ratings. (Pl's ¶ 4 & July 2014 Hr'g Tr. 2–6). She told the Board members that Davidson "is not a bad guy"; he "plans lessons . . . but he's not able to execute them." (July 2014 Hr'g Tr. 3–4). The Board emphasized that the District must evaluate Davidson "fairly on his ability to do his job." (*Id.* 7–8). Hart agreed, otherwise the whole evaluation would be "a joke." (Pl.'s ¶ 6 & July 2014 Hr'g Tr. 7–8). By considering the evidence as a whole, *see Ortiz*, 834 F.3d at 765, it is clear that the July 2014 hearing was concerned with Davidson's lack of performance improvement, and not with him taking any future FMLA leave.

Davidson contends that the remediation process was a "sham" and pretext because (1) he was not legally qualified to teach Earth and Space Science (Earth Science); (2) Hart did not design the remediation plan, and (3) he taught the "lower kids." (Dkt. 101 at 11–12). These arguments are without merit. First, Davidson was legally qualified to teach Earth Science. He holds a professional educator's license

and has taught Earth Science since he began teaching for the District in 1995. (Def's Ex. B). Davidson also meets the applicable requirements of the Illinois State Board of Education's Regulations pertaining to Earth Science. 23 Ill. Admin. Code §§ 1.730, 1.737; (*see* Def's Ex. Y (Fox Aff.) ¶¶ 9–15). In any event, even if Davidson was not "legally qualified" to teach Earth Science, he provides no credible explanation as to how teaching a class during the 90-day remediation period that he has taught since 1995 and for 12 of his last 15 years with the District (Def's Ex. A at 136, Ex. AA) is evidence of retaliation for his use of FMLA leave. Second, Hart testified that she developed the remediation plan in consultation with the District's attorney and state resources. (Def's Ex. C at 25–27, 31–32, 34). And even if Hart did not design the remediation plan, it would not be evidence of a discriminatory animus against Davidson's use of FMLA leave. The remediation plan was created five months *before* Davidson requested FMLA leave. *See Long*, 585 F.3d at 350. Third, the fact that Davidson was teaching the "lower kids" enrolled in Earth Science is not evidence of the District's intent to retaliate against him for taking FMLA leave. As discussed above, Davidson has taught Earth Science since 1995 and for 12 out of his last 15 years as a District teacher. And the remediation plan was in place *before* Davidson requested FMLA leave.

Finally, Davidson's contention that the District improperly considered his age when terminating his employment (Dkt. 101 at 10) is without merit. While the Board briefly discussed his age at the July 2014 hearing—*before* he took FMLA leave—it was in the context of whether Davidson might consider taking his pension

rather than completing the 90-day remediation plan. (July 2014 Hr'g Tr. 4–5). In any event, Davidson's age is not relevant to his claim that he was terminated for his use of FMLA leave. Indeed, there is no evidence of a causal connection between the District's consideration of Davidson's age and his claim that he was terminated in retaliation for using FMLA leave.

Summary judgment is granted in the District's favor on Count II.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [79] is **GRANTED**. Plaintiff's Motion to unseal the transcripts of the Board's July 15, 2014, and March 17, 2015 hearings [102] is **GRANTED**.

E N T E R:

Dated: May 23, 2017

_____
MARY M. ROWLAND
United States Magistrate Judge